**Seymour L. GALE and Ethel G. Gale, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 90 C 3737.

United States District Court, N.D. Illinois, E.D.

June 28, 1991.

Russell Woody, Gillian F. Siegel, Cotton, Watt, Jones & King, Chicago, Ill., for plaintiffs.

Benjamin R. Norris, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Fred L. Foreman, U.S. Atty., Nancy Needles, James A. Shapiro, Asst. U.S. Attys., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The plaintiffs, Seymour and Ethel Gale, have brought this action pursuant to § 7422 of the Internal Revenue Code of 1986, 26 U.S.C. § 7422, seeking recovery of taxes erroneously assessed and collected. The United States moves to dismiss the

---

plaintiffs' complaint. Because an answer to the complaint has already been filed, and the pleadings are, therefore, closed, the motion is properly styled a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. No evidence outside the pleadings has been submitted in conjunction with this motion, however. Thus the standards of a Rule 12(b)(6) motion apply. *See Republic Steel Corp. v. Penn. Engineering Corp.*, 785 F.2d 174, 182–83 (7th Cir.1986). For the reasons set forth below, the court grants the government's motion.

## BACKGROUND

This action involves the taxable year ending December 31, 1984. During that year, Seymour Gale was self-employed, with gross income from his business of $21,000. Gale contributed $7,031 to the Seymour L. Gale Defined Benefit Pension Plan, a retirement plan qualified under § 401(a) of the code as a Keogh (or H.R. 10) retirement plan.[1]

Prior to April 15, 1985, the plaintiffs filed a joint federal income tax return for the year 1984 and paid in full the taxes calculated to be due and owing. In determining their tax liability, the plaintiffs followed the instructions accompanying Form 1040 and its schedules. Accordingly, Gale included the $7,031 pension contribution on Line 27 of Form 1040 as an adjustment to income. In addition to Form 1040, the plaintiffs filed Schedule C detailing the profit from Gale's business. While he claimed deductions for various expenses totalling $11,004, Gale did not include his pension contribution as a deduction from the gross income of his business or profession on Schedule C. Consequently, Gale reported business income of $9,996 (Form 1040, Line 12; Schedule C, Line 32) and paid Social Security self-employment taxes

of $1,130 (Form SE, Line 14), based on that income.

On April 15, 1988, the plaintiffs timely filed a joint amended federal income tax return for the taxable year ending December 31, 1984. On the amended return, Gale included his $7,031 pension contribution on Schedule C, as a deduction from the income of his trade or profession (Schedule C, Line 21); that is, as a business expense, rather than on Line 27 of Form 1040 as an adjustment to income. As a result of this change, the amended return indicated that Gale's business or professional income for the year was $2,965, and his Social Security self-employment tax was $335.[2] The plaintiffs sought a refund in the amount of $795 to reflect the difference in the self-employment tax originally paid and the amended figure.

By letter dated June 30, 1988, the Internal Revenue Service disallowed the plaintiffs' claim for a refund, explaining that contributions to a Keogh plan are adjustments to gross income, not self-employment income. It is this disallowance that the plaintiffs challenge in their complaint.

## ANALYSIS

The plaintiffs argue that Seymour Gale's contribution to his Keogh plan reduced his "net earnings from self-employment" under 26 U.S.C. § 1402(a), and, therefore, that contribution should also serve to reduce the business income that was subject to the self-employment tax.[3] Because the self-employment taxes collected on Gale's 1984 business income were not reduced by the amount of his pension contribution, the plaintiffs claim they were taxed excessively. They seek a refund of the $795 difference between the self-employment tax paid initially and the amount calculated in the plaintiffs' amended return.

---

**1.** The Government has assumed for purposes of this motion that the amount claimed as a contribution to the Seymour L. Gale Defined Benefit Pension Plan was actually paid into a qualified Keogh plan.

**2.** The plaintiffs' income tax liability did not change, because while the amended return

(Form 1040) did not show the $7,031 Pension contribution as an adjustment to income on line 27, the figure for business income on line 12 was reduced by $7,031.

**3.** All references to statutory sections are to the tax code, Title 26.

Section 1402(a), which defines the net earnings from self-employment used to calculate the self-employment tax rate under § 1401, specifically allows deductions which are attributable to the trade or business of the self-employed individual. Section 1402(b) provides that the term "self-employment income" means the "net earnings from self-employment derived by an individual." "Net earnings from self-employment" is defined in § 1402(a) as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business."

Section 1402 is part of Subtitle A of the Code, which covers income taxes. Among the deductions allowed under Subtitle A is the deduction under § 404(a) for contributions to certain retirement plans, including Keogh plans. Therefore, the plaintiffs conclude, the "net earnings from self-employment" under § 1402 may be reduced by the deduction under § 404(a), so long as that deduction is "attributable to [the taxpayer's] trade or business," as specified under § 1402(a). The success of the plaintiffs' argument, therefore, turns on the question of whether Gale's contribution to his Keogh plan can be treated as an expense attributable to his trade or business.

The government contends that a Keogh contribution is not a business expense, but is a transfer of business profits from the business to the owner. This is not a business expense, under the government's analysis, because its benefit redounds to the self-employed individual, not his business. The government challenges the plaintiffs' assumption that because Congress permitted self-employed individuals to deduct contributions to Keogh plans in computing ordinary income tax, these contributions are ordinary and necessary business expenses.

According to the government, the deductions allowed under § 1402(a) are those ordinary and necessary business expenses allowed as deductions under § 162. If the contributions do not fall within that rubric, they may not be deducted under § 1402(a).

A self-employed individual's contributions to a Keogh plan are not ordinary and necessary business expenses, the government contends, although they are treated as such by virtue of certain fictions established in § 404(a)(8). These fictions are not transferable to other sections of the Code such as § 1402(a).

Section 404(a) provides that "[i]f contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring compensation, such contribution or compensation shall not be deductible under this chapter; but, if they would otherwise be deductible, they shall be deductible under this section," subject to certain limitations. Thus, § 404 begins by disallowing a deduction for employer contributions, and then reinstates the deduction within the terms of § 404.

This version of the Code is the product of certain retroactive amendments, one of which, under the Tax Reform Act of 1986, Pub.L. No. 514, 100 Stat. 2085 (1986), served to replace the old language of § 404(a) providing that, if contributions were paid by an employer as set forth under the revised section, such contributions were not deductible under either § 162 or § 212, but if otherwise deductible, such contributions were deductible under § 404(a). The omission of the reference to sections 162 and 212, was not a substantive change, but was intended to prevent taxpayer avoidance of the deduction-timing rules of § 404(a)(5), which relate to non-qualified plans. *See* S.Rep. No. 313, 99th Cong., 2d Sess. 1013 (1986). To be deductible, therefore, contributions must satisfy, among other conditions, the conditions of § 162(a)(1). Specifically, they must constitute ordinary and necessary business expenses incurred as compensation for personal services actually rendered. *See David R. Webb Co., Inc. v. Comm'r,* 708 F.2d 1254 (7th Cir.1983).

Thus, a deduction under § 404(a) must satisfy four conditions: The underlying contribution must be made (1) by an employer, (2) on behalf of an employee, (3) it

must serve to compensate the employee, and, (4) it must qualify as a business expense within the meaning of sections 162 and 404.

The deduction for contributions to a self-employed person's Keogh plan is specifically provided for under § 404(a)(8),[4] which enables Keogh contributions to satisfy the conditions for deductibility. Section 404(a)(8) was enacted as part of the Self–Employed Individuals Retirement Act of 1962. Prior to 1962, a self-employed person could not deduct Keogh contributions under any section of the tax code. Under § 404(a)(8)(A), by reference to § 401(c)(1) and § 401(c)(4), a self-employed individual is treated both as his own employer and employee. The Senate Report explains this provision, as follows:

> As employers, self-employed individuals are permitted, like other employers, to deduct contributions (within specified limits) made to pension or profit sharing plans for the benefit of themselves and such other employees as may be covered under the plan. As employees, as with other employees, they are not taxed on such contributions made for their benefit, or the income thereon, until they receive the funds upon retirement or otherwise.

1962 U.S.Code Cong. & Admin.News, p. 2964.

Section 404(a)(8)(B) defines "earned income," by reference to § 401(c)(2), as the net earnings from self-employment (as defined in § 1402(a)) secured through the personal services of the taxpayer. By virtue of § 404(a)(8)(D), the compensation of a self-employed individual through contributions to a Keogh plan is treated as earned income. These sections therefore establish three of the four prerequisites to deductibility under § 404(a). They do so by changing certain common law assumptions: that a self-employed person was neither his own employer, nor his own employee, and that the income he received from his self-employment was not compensation.

Finally, in order to deduct Keogh contributions under § 404, a self-employed individual must establish that the contributions were an ordinary and necessary business expense. This requirement, and, specifically, whether § 404(a)(8)(C) is the means through which it is fulfilled, is the essence of the dispute between the parties. Section 404(a)(8)(C) provides that the contributions of a self-employed individual "shall be considered to satisfy the conditions of section 162 or 212 to the extent that such contributions do not exceed the earned income of such individual." *See* footnote 4, *supra.* The plaintiffs claim that because such contributions clearly satisfy § 162, and are therefore "ordinary and necessary" business expenses "incurred ... in carrying on [the taxpayer's] business," they must also be "attributable" to the trade or business within the meaning of § 1402(a). The question, therefore, is whether § 404(a)(8)(C) establishes a legal fiction, or merely acknowledges what is already clearly established.

---

**4.** For the tax year 1984, section 404(a)(8) provided as follows:

(8) Self-employed individuals.—In the case of a plan included in paragraph (1), (2), or (3) which provides contributions or benefits for employees some or all of whom are employees within the meaning of section 401(c)(1), for purposes of this section—
(A) the term "employee" includes an individual who is an employee within the meaning of section 401(c)(1), and the employer of such individual is the person treated as his employer under section 401(c)(4);
(B) the term "earned income" has the meaning assigned to it by section 401(c)(2);
(C) the contributions to such plan on behalf of an individual who is an employee within the meaning of section 401(c)(1) shall be con-

sidered to satisfy the conditions of section 162 or 212 to the extent that such contributions do not exceed the earned income of such individual (determined without regard to the deductions allowed by this section) derived from the trade or business with respect to which such plan is established, and to the extent that such contributions are not allocable (determined in accordance with regulations prescribed by the Secretary) to the purchase of life, accident, health, or other insurance; and
(D) any reference to compensation shall, in the case of an individual who is an employee within the meaning of section 401(c)(1), be considered to be a reference to the earned income of such individual derived from the trade or business with respect to which the plan is established.

According to the plaintiffs, the emphasis in § 404(a)(8)(C) is on limiting the deduction to earned income, to prevent pension contributions for self-employed individuals from becoming the source of losses. They argue that the "shall be considered" language is intended to define at which point an expense which is clearly attributable to a trade or business can *no longer* be considered as such, in other words, when it surpasses earned income. This is different from the government's interpretation, which reads the "shall be considered" language to mean that an expense, which is not truly a business expense, may be considered to be such only by virtue of that section.

The government answers the plaintiffs' interpretation by arguing that it merely proves the government's point. A business person would not willingly "incur an expense that would result in a net loss for his business," unless the expense benefitted him personally. Reply at 7. Therefore, a Keogh contribution, although allowed as a deduction by virtue of § 404(a)(8)(C), cannot be considered an ordinary and necessary business expense outside of that context. Although this argument is specious, because a decision to take business losses in a given year is often supported by accounting practices which benefit the business itself, not merely the self-employed person, the government's conclusion is supported by both the statutory scheme and the legislative history.

The Senate Report on § 404(a) notes that while § 404 establishes no fixed maximum limitation for the amount deductible, "the new section 404(a)(8) provides that certain amounts contributed on behalf of self-employed individuals do not satisfy the requirements of sections 162 or 212 and are, therefore, not deductible." 1962 U.S.Code Cong. & Admin.News, p. 3004. Thus, § 404(a)(8) establishes the amounts excluded from the determination of the deduction from gross income: "The amounts to which the new section 404(a)(8) applies are contributions on behalf of self-employed individuals which exceed the earned income derived from the trade or business with respect to which the plan is established, and contributions which, under regulations prescribed by the Secretary or his delegate, are allocable to the purchase of life, accident, health, or other insurance." *Id.* Bearing in mind that prior to the passage of this section, self-employed individuals could not deduct their contributions to Keogh plans, it is clear that § 404(a)(8) both creates the conditions that allow for the deduction and limits the deduction. This understanding supports the government's analysis. The plaintiffs' argument that § 404(a)(8) establishes the point at which a contribution can no longer be deemed a business expense ignores the fact that such contributions have never before been considered business expenses.

The government buttresses its analysis by relying on § 62(a)(6). Section 62(a) defines the term "adjusted gross income" as gross income minus certain enumerated deductions. One of those deductions, set forth in § 62(a)(6), is for pension, profit-sharing and annuity plans of self-employed individuals. Section 62(a)(6) allows adjusted gross income to incorporate the deduction of § 404 "[i]n the case of an individual who is an employee within the meaning of section 401(c)(1)."

The government explains that § 62(a)(6) was enacted at the same time as § 404(a)(8) as part of the Self–Employed Individuals Retirement Act of 1962. While § 62(a)(1) allowed a deduction for business expenses, § 62(a)(6) was a necessary addition to the tax code to incorporate a deduction for Keogh contributions in the calculation of adjusted gross income. Once again, the government suggests, Congress has incorporated an explicit reference to the deductibility of contributions of self-employed individuals. In each case, those contributions are explicitly set forth, not assumed to fall within the ambit of business expenses.

The plaintiffs maintain that the government's argument proves too much. The government's argument, they claim, does not explain the 1986 amendment to § 62(a)(6) which expanded the deduction from one that was limited to those contributions made on behalf of the self-employed person, to a deduction for all contri-

butions under § 404, which includes those contributions made on behalf of a self-employed person's common law employees. Because § 404 includes contributions made on behalf of common law employees, an argument that a deduction under § 62(a)(6) is different from a deduction under § 62(a)(1) implies that contributions made on behalf of common law employees are not deductions "attributable to a trade or business." Such contributions are clearly deductions, however, because under § 1402(a) a self-employed person is entitled to deduct contributions to a qualified retirement plan to the extent that those contributions satisfy the requirements of § 404 and are for the benefit of common law employees.

In addition, the plaintiffs term the government's reference to § 62(a) a "red herring." They argue that the definition of "adjusted gross income" has nothing whatsoever to do with computing the proper deductions under § 162 or § 404. Moreover, they offer a different explanation for the specification of § 62(a)(6). Section 62(a)(1) excludes from trade or business expenses those expenses that "consist of the performance of services by the taxpayer as an employee." Therefore, because a self-employed individual is treated as both employer and employee, under § 404(a)(8), Congress had to clarify that the § 62(a)(1) exclusion did not extend to self-employed persons.

Both parties argue that § 62(a)(6) was enacted as a point of clarification. This assumption is supported by IRS Temporary Regulation § 1.62–1T(b), which explains that § 62 does not create new deductions, but instead specifies which previously enumerated deductions are allowed in computing gross income. Each party contends that § 62(a)(6) serves to clarify a different point. The plaintiffs believe that it was enacted to clarify the general right to treat contributions to Keogh plans as business expenses. The government maintains, on the other hand, that § 62(a)(6) serves to clarify that contributions to Keogh plans are to be treated as business expenses only when § 404(a) is specifically implicated.

The Senate Report states that "[t]he bill also makes it clear that amounts contributed to a qualified retirement plan by a self-employed individual which are deductible, are treated as deductions from gross income in computing adjusted gross income. Thus, a self-employed individual may take this deduction and still qualify for the standard deduction." 1962 U.S.Code Cong. & Admin.News, p. 2990. In addition, the Senate Report explains that "the bill amends section 62 of the Internal Revenue Code of 1954, relating to the definition of 'adjusted gross income,' to provide that, in computing adjusted gross income, there shall be allowed, in the case of a self-employed individual, the deductions allowed under sections 404 and 405 for contributions on behalf of such an individual to a qualified pension, annuity, profit-sharing, or bond-purchase plan." *Id.* at 3017.

These passages from the legislative history of § 62(a)(6) appear to support the government's argument that Congress included § 62(a)(6) to allow Keogh contributions to be treated as deductible business expenses by virtue of the reference to § 404(a). In other words, Keogh contributions may be treated as an adjustment to gross income only because § 62(a)(6) incorporates the fictions created under § 404(a)(8). This interpretation is in keeping with the explicit nature of the rights created under the Self–Employed Individuals Retirement Act of 1962.

The plaintiffs devote the majority of their argument to the proposition that any doubt as to the deductibility of pension contributions for purposes of computing the self-employment tax is resolved by the fact that, when Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), it expressly intended to eliminate from the tax laws the historic discrimination against qualified retirement plans of unincorporated business and to place self-employed persons on an equal footing with common law employees. Because employer contributions to a qualified plan under 26 U.S.C. § 3121(a)(5) are not includable in wages for purposes of computing the Federal Insurance Contribution Act (FICA) tax of common-law employees,

26 U.S.C. §§ 3101 and 3111, this effort to create parity would be undermined if self-employed individuals could not deduct contributions to qualified plans before assessing the self-employment tax.

While Congress aimed to eliminate many of the differences between the treatment of self-employed individuals and other employers, it left some of the distinctions intact. For example, corporations, except for subchapter S corporations, are required to pay a tax on their income wholly apart from any tax on the income of the corporate owners, while sole-proprietorships are not. The Senate Report explicitly stated that the bill did not eradicate all differences in treatment:

> [This bill] ... is designed to encourage the establishment of voluntary retirement plans by self-employed persons by allowing self-employed individuals to be covered by qualified plans and by extending to them some of the favorable tax benefits present law now provides in the case of qualified retirement plans established by employers for their employees.

1962 U.S.Code Cong. & Admin.News, p. 2964. The Conference Report cited by the plaintiffs was only slightly less emphatic:

> The conference agreement generally eliminates distinctions in the tax law between qualified pension, etc., plans of corporations and those of self-employed individuals (H.R. 10 plans). The agreement (1) repeals certain of the special rules for H.R. 10 plans, (2) extends other of the special rules to all qualified plans, including those maintained by corporate employers, and (3) generally applies the remainder of the special rules, with appropriate modifications, only to those plans (whether maintained by a corporate or noncorporate employer) which primarily benefit the employer's key employees ...

Conference Report No. 97–760 (97th Cong., 2d Sess.) reprinted in 1982–2 C.B. 600, 673. Nowhere does Congress assert that absolute parity was intended.

■ This court cannot assume that a deduction is available to the plaintiffs by virtue of Congress' statement that distinc-

tions are "generally" eliminated. The Seventh Circuit has held firmly to the principle that "deductions are extensions of legislative grace and not matters of right." *Jerome Mirza & Assoc. Ltd. v. United States*, 882 F.2d 229, 232 (7th Cir.1989). Accordingly, the court has held that "a deduction from income for tax purposes may be taken only when support for it can be found in the language of a statute, appurtenant regulations, or legislative history." *Id., citing Hintz v. Comm'r*, 712 F.2d 281, 284 (7th Cir.1983). The taxpayer bears the burden of establishing that the claimed deductions are valid, and the Commissioner's determinations are presumed to be correct. *Colonial Savings Assoc. & Subsidiaries v. Comm'r*, 854 F.2d 1001, 1006 (7th Cir.1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989).

### CONCLUSION

While it is clear that Congress wished to eliminate certain, perhaps even most, of the distinctions between the contributions of a corporate employer and of a self-employed individual to qualified pension plans, this court can not presume in light of the legislative scheme that Congress wished to allow the deduction sought by the plaintiffs. Sections 62(a) and 404(a)(8) were enacted as part of the drive to eliminate the historic discrimination claimed by self-employed persons. While these changes were explicitly mandated under the Self–Employed Individuals Retirement Act of 1962, no comparable amendments were made to § 1402. The deductions allowed in each of these sections depend on the fictions allowed under § 404(a)(8). Nowhere has Congress mandated that the same fiction, that a self-employed individual's contribution to a Keogh plan constitutes a deduction attributable to his trade or business, should be extended to the calculation of gross income for purposes of the self-employment tax imposed under § 1401. Neither the legislative history nor the language of the relevant provisions of the tax code indicate that this was the intent of Congress. The plaintiff taxpayers have failed to sustain

their burden of establishing that the claimed deductions are valid. Accordingly, the government's motion to dismiss is granted.