[Cite as *Steingass v. Steingass*, 2012-Ohio-1647.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97515**

## DONNA L. STEINGASS, SUCCESSOR TRUSTEE

PLAINTIFF-APPELLEE

vs.

## DONNA L. STEINGASS, INDIVIDUALLY, ET AL.

DEFENDANTS-APPELLEES

## [APPEAL BY CASH MISCHKA, ET AL.

DEFENDANTS-APPELLANTS]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 11 ADV 0166881

**BEFORE:** Cooney, P.J., Keough, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 12, 2012

**ATTORNEYS FOR APPELLANTS**

Frances Floriano Goins
Isaac J. Eddington
James A. Goldsmith
Patrick J. Tulley
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd St., Suite 1100
Cleveland, OH 44113-1448

**GUARDIAN AD LITEM**

John P. Koscianski
West Moreland Building
5700 Pearl Road
Suite 302
Parma, OH 44129

**ATTORNEYS FOR APPELLEES**

**For Donna L. Steingass, Successor Trustee**

Douglas B. Schnee
Jeffrey P. Consolo
Erin K. Walsh
McDonald, Hopkins, Burke & Haber
2100 Bank One Center
600 Superior Ave., East
Cleveland, OH 44114

**For Donna L. Steingass, Individually**

Leon A. Weiss
Franklin C. Malemud
Reminger Co., LPA
1400 Midland Building
101 Prospect Avenue, West

Cleveland, OH 44115-1093
Marcia J. Wexberg
Calfee, Halter & Griswold
1400 Keybank Center
800 Superior Avenue
Cleveland, OH 44114

COLLEEN CONWAY COONEY, P.J.:

{¶1} Defendants-appellants, Cash Mischka, Valerie Mischka, Spencer Mischka, and Clay Mischka, appeal the trial court's grant of summary judgment declaring that Donna L. Steingass, as Trustee of the Frank L. Steingass Revocable Living Trust, has authority to direct all of the assets of the late Frank L. Steingass into a marital trust. We find no merit to the appeal and affirm.

{¶2} The late Frank L. Steingass ("Frank" or the "Settlor") created the Frank L. Steingass Revocable Living Trust (the "Trust") for the benefit of his wife Donna L. Steingass ("Donna") and his stepson Cash Mischka and Cash's children, Valerie, Spencer, and Clay Mischka (the "Mischkas"). The Trust Agreement (the "Agreement") provided that upon Frank's death, the Trust's assets would be split between a "Marital Trust" for Donna's benefit, and a "Family Trust" that would benefit the Mischkas. Upon Donna's death, the remaining Marital Trust assets would (for the most part) be used for the Mischkas' benefit as well.

{¶3} It is undisputed that when Frank created the Trust Agreement, he was contemplating the unsettled state of federal estate tax law in 2006, when the Agreement was executed. The Economic Growth and Tax Relief Reconciliation Act of 2001 ("the 2001 Act"), which was in effect in 2006, gradually reduced the maximum federal estate tax rate from 50 percent in 2002 to a rate of 45 percent in 2009. It also gradually increased the applicable exclusion amount from $1 million in 2002 to $3.5 million in

2009. The 2001 Act completely repealed the federal estate tax in 2010 and reinstated the tax rates and exemptions for 2011 that existed prior to the 2001 Act.

{¶4} When Frank executed his Trust in 2006, he contemplated a changed federal estate tax scheme depending on the year of his death. The Agreement provided that, if upon the Settlor's death, the federal estate tax was "repealed and not in effect," all Trust assets would go to the Marital Trust. Under these circumstances, no assets would flow into the Family Trust.

{¶5} The 2010 Act, which was enacted in December 2010, retroactively reinstated the federal estate tax for 2010 with a 35 percent rate and a $5 million applicable exclusion amount. The 2010 Act also contained a provision that allowed the estate of a person who died during the 2010 calendar year to choose to remain under the complete repeal and not be subject to federal estate tax, or to be subject to an alternative tax relief scheme under which the estate assets would be "stepped up" to their date of death value, if the estate chose to be subject to the federal estate tax.

{¶6} Donna filed a complaint for declaratory judgment seeking to invoke the "no federal estate tax" clause in the Agreement because the 2010 Act allowed the estate to completely "opt out " of the federal estate tax. Both parties filed motions for summary judgment. Donna argued that on Frank's date of death, December 11, 2010, there was no federal estate tax and, therefore, the plain language of the Trust required that all estate assets be placed in the Marital Trust. She also argued that although the 2010 Act was

made retroactive and applicable to the actual date of death, the opt-out provision in the 2010 Act allowed for a situation where no federal tax was in effect on the date of death.

{¶7} The Mischkas argued that because the 2010 legislation applied retroactively, there was a federal estate tax on the actual date of death and, therefore, estate assets were to be distributed to both the Marital Trust and the Family Trust. The Mischkas also argued that because the 2001 Act was "repealed," the provision for placing all of the assets into the Marital Trust is inapplicable.

{¶8} In granting summary judgment in favor of Donna, the probate court found that on the actual date of Frank's death, there was no effective federal estate tax. The court acknowledged that the 2010 Act applied retroactively to impose a federal estate tax on the date of death, but found that the opt-out provision effectively allowed the 2001 Act to apply and the estate tax to remain repealed at the time of Frank's death. The Mischkas now appeal, raising one assignment of error.

{¶9} In their sole assignment of error, the Mischkas argue the trial court erred in holding that the federal estate tax was not in effect at the time of Frank's death for purposes of the Trust Agreement.

{¶10} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the

moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

{¶11} It is undisputed that there is no genuine issue as to any material fact. The sole issue before this court is the construction of the Trust as it relates to the federal estate tax legislation in effect on the date of the Settlor's death.

{¶12} In construing the language of a revocable inter vivos trust, courts apply the same rules of construction as those used for interpreting wills. *Ohio Citizens Bank v. Mills*, 45 Ohio St.3d 153, 543 N.E.2d 1206 (1989), superseded by statute on other grounds. Our fundamental goal is "to ascertain and carry out, within the bounds of the law, the intent of the testator." *Prentiss v. Goff*, 192 Ohio App.3d 475, 2011-Ohio-734, 949 N.E.2d 560 (8th Dist.), citing *Domo v. McCarthy*, 66 Ohio St.3d 312, 314, 612 N.E.2d 706 (1993). Therefore, when the language of the trust is clear and unambiguous, the settlor's intent must be ascertained from the express terms of the trust itself. *Id.* Only when the express language of the instrument creates doubt as to its meaning may the court consider extrinsic evidence to determine the testator's intent. *Oliver v. Bank One, Dayton, N.A.*, 60 Ohio St.3d 32, 573 N.E.2d 55 (1991), paragraph one of the syllabus.

**{¶13}** In addition, when determining the testator's intent, we consider not just the contested language but rather the "whole [trust] * * * read in light of the applicable law, and circumstances surrounding the [trust's] execution." *Cent. Trust Co. of N. Ohio, N.A. v. Smith*, 50 Ohio St.3d 133, 136, 553 N.E.2d 265 (1990).

**{¶14}** Article IX of the Agreement, which governs the applicability of federal estate tax on the Trust, provides, in pertinent part:

> Congress enacted the Economic Growth and Tax Relief Reconciliation Act (the Act), which has created some uncertainty as to the application and the extent of the application of the federal estate tax * * * on an individual's estate. It is also possible that Congress will make further changes in the application of these taxes. The preceding Article reflects the Settlor's plan for division into shares/trusts for the Settlor's beneficiaries based on the Settlor's death occurring at the time this Trust is executed. This Article is intended to control the actual division in shares/trusts depending on the circumstances at the Settlor's actual date of death. It is, therefore, the Settlor's intention that this Article at the Settlor's death will control whether the disposition of the Trust Estate is as provided in the preceding Article or as specifically modified or provided in this Article. * * *
>
> * * *
>
> If the federal estate tax has been repealed and is not in effect upon the Settlor's death, and the Settlor's wife shall survive the Settlor, then the entire trust estate shall be allocated to THE DONNA L. STEINGASS MARITAL TRUST to be held, administered and distributed as provided herein.

**{¶15}** Acknowledging that the federal estate tax laws were in a state of flux, Settlor anticipated the possibility that he could pass away in 2010, when there would be no estate tax. Mindful of these circumstances, the Settlor stated: "This Article is intended to control the actual division in shares/trusts depending on the circumstances at

the Settlor's *actual date of death*." (Emphasis added.) On the actual date of his death, the 2001 Act had repealed the estate tax, and the 2010 Act had not yet been enacted. Thus, there was no federal estate tax in effect on the Settlor's estate on his actual date of death.

{¶16} The Mischkas argue a federal estate tax was in effect at the time of the Settlor's death because the 2010 Act, which was enacted five days after Frank's death, applied retroactively to the entire 2010 year. In support of their argument, the Mischkas cite several federal cases for the proposition that "[c]ongress almost without except has given general revenue statutes effective dates prior to the dates of actual enactment." *United States v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). (Rejecting constitutional challenge to retroactive limitation of estate tax deduction.)

{¶17} The Mischkas also refer to *Nationsbank of Texas, N.A. v. United States*, 269 F.3d 1332 (2001), *cert. denied*, 537 U.S. 813, in which the executor of a woman's estate claimed that the 50, rather than 55 percent tax rate, was applicable because the woman had died in March 1993. The court rejected the executor's argument and held that the recently enacted tax laws "made the fifty-five percent rate retroactive to January 1993, which had the same effect as if President Bush had signed the bill presented to him in 1992." *Id.* at 1335.

**{¶18}** Based on these cases, the Mischkas assert that case law reinforces the notion that the " retroactive" language in the 2010 Act rendered the federal estate tax very much "in effect" when the Settlor died. We disagree.

**{¶19}** Although Congress has applied tax laws retroactively in the past, the 2010 Act is different from all previously enacted retroactive tax laws because it offers the taxpayer (estate) the right to opt out of the new tax. Specifically, the 2010 Act gave the estate the option to remain in federal estate tax repeal, as it would have been had the 2010 Act never been enacted. Thus, at the moment of death, the federal estate tax was repealed and not in effect.

**{¶20}** Moreover, other provisions in the Trust illustrate the Settlor's intent to pay as little federal estate tax as possible, while primarily benefitting his surviving spouse during her lifetime. The Marital Trust gives Donna powers of appointment and discretion to determine how much Trust property will pass to her son, Cash Mischka, and her son's descendants upon her death. The Settlor's inclusion of the power of appointment expresses an intent to benefit his wife with as much trust property as possible, including subsequent control of how those assets ultimately pass upon her death.

**{¶21}** Similarly, in the event that assets were to flow into the Family Trust, the Family Trust would be funded only in the amount of the estate tax exemption and any and all excess assets were allocated to the Marital Trust. These limitations for potential

funding of the Family Trust indicate that the Settlor intended to primarily benefit Donna, and that funding of the Family Trust was limited to instances where federal estate tax is imposed. The terms and structure of the Trust demonstrate the Settlor's intent to first direct allocation of property in a manner that minimizes federal estate tax and maximizes the amount going to Donna, his wife of 27 years.

{¶22} Although the 2010 Act applies retroactively to estates of people who died during the year 2010, the 2010 Act allowed Frank's estate to avoid any federal estate tax. These circumstances, coupled with the Settlor's clear intention to avoid federal estate tax if possible in order to benefit Donna, require that we find the federal estate tax was repealed on the actual date of the Settlor's death. We concur with the probate court that the subsequent retroactive application of the 2010 tax is inconsequential because it allowed the estate tax to remain in repeal.

{¶23} Accordingly, the sole assignment of error is overruled.

{¶24} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR